IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHIXAPKAID DONALD MICHAEL PAVEL,

        Plaintiff,

    v.

UNIVERSITY OF OREGON; DOUG BLANDY;
PENELOPE DAUGHTERY; ANNIE BENTZ;
RANDY KAMPHAUS; JULIET A. BAXTER;
JANNE UNDERRINER; JASON YOUNKER;
and BRIAN KLOPOTEK,

        Defendants.

Case No. 6:16-cv-00819-AA
OPINION AND ORDER

AIKEN, Judge:

## INTRODUCTION

Plaintiff CHIXapkaid Pavel asserts various claims related to the termination of his employment against defendants University of Oregon and various individuals. Plaintiff alleges defendants violated his rights under federal employment discrimination statutes, the Due Process Clause, and the First Amendment. Individual defendants–comprised of the eight public employees but not the University of Oregon–only move for summary judgment on plaintiff's

procedural and substantive due process claims. For the reasons set out below, the Court grants defendants' motion for summary judgment (doc. 35).

## BACKGROUND

Plaintiff was a tenured professor at the University of Oregon's College of Education from September 16, 2010, until the University of Oregon terminated his employment contract on January 21, 2015. Pl.'s Am. Compl. ¶ 4 (doc. 28). Plaintiff's termination followed a series of complaints that plaintiff made unwelcomed and nonconsensual contact and comments of a sexual nature to various students. *See* Blandy Dep. 28:9–21 (doc. 54-1).

Of particular note is the formal grievance a student filed with the University of Oregon's Office of Affirmative Action and Equal Opportunity (OAAEO) on November 17, 2017. Daugherty Decl. Ex. 2 (doc. 38). After the University of Oregon received the student's report, the university placed plaintiff on administrative leave while it investigated the student's claim. *Id.* Plaintiff learned the university had placed him on leave a few days later on November 21, 2014. Pavel Decl. ¶ 3 (doc. 52).

On December 18, 2014, Penny Daugherty and Anne Bonner from OAAEO sat down with plaintiff and union representative Debra Merskin to discuss the investigation. *Id.* ¶ 4. At that meeting, Ms. Daugherty and Ms. Bonner relayed their suspicion that plaintiff appeared to engage in a pattern of sexual harassment and interviewed him to collect additional information regarding the accusations. *Id.* ¶ 6. After the meeting, Ms. Daugherty assured plaintiff that he was free to provide any additional evidence or documentation so long as he provided it by January 6, 2015. Daugherty Decl. ¶ 4. Plaintiff never submitted any additional evidence.

PAGE 2 – OPINION AND ORDER

At the conclusion of the university's investigation, plaintiff and Ms. Merskin met with various staff members on January 16, 2015 to discuss the university's findings. Blandy Decl. ¶ 4 (doc. 37). Participating staff included defendants Senior Vice Provost for Academic Affairs Doug Blandy and Dean of the College of Education Randy Kamphaus. Pavel Decl. ¶ 10 (doc. 52). The university found by a preponderance of the evidence that plaintiff violated its sexual harassment policy and interfered with students' rights to equal access to education. *Id.* ¶ 5; Blandy Decl. Ex. 3 at 1. More specifically, the university found that plaintiff "engaged in unwelcome verbal and physical conduct of a sexual nature" that included touching a student's back, buttocks, and underwear. Blandy Decl. Ex. 3 at 1. The university also found plaintiff made "[i]nappropriate comments of a sexual nature" and remarked "on the student's appearance after having her stand in front of a mirror." *Id.* These findings were presented to plaintiff in writing. *Id.* Plaintiff had the opportunity to respond, but made no comments during that meeting. Blandy Decl. ¶ 6.

At the January 16 meeting, the university also notified plaintiff it intended to terminate their employment relationship on January 21, 2015. The university gave plaintiff until January 20, 2015 to submit any written response or relevant evidence to change the termination decision. Blandy Decl. Ex. 3 at 2; Merskin Decl. ¶ 5 (doc. 53); Pavel Decl. ¶ 10. Plaintiff never replied with any additional evidence or testimony. Pavel Dep. 171:6–23 (doc. 65). Instead, plaintiff responded with a request for more information. Pavel Decl. Ex. A at 1–2. The university did not

comply with plaintiff's request. Pavel Decl. ¶ 7. Plaintiff avers the January 16 meeting was the

first time he learned that the university contemplated terminating him.[1] *Id.* ¶ 10.

On May 5, 2015, plaintiff grieved his termination under his collective bargaining

agreement. Brady Decl. ¶ 4 (doc. 39). On February 22, 2016, the university offered plaintiff the

opportunity to engage in arbitration under the collective bargaining agreement. *Id.* Had the

arbitration proceeded, plaintiff would have been able to "call witnesses, offer exhibits, and make

arguments" that the university did not fire him for just cause. *Id.* Plaintiff's union withdrew

from the arbitration and as such, plaintiff could not proceed with arbitration and never received a

post-termination hearing. *Id.* at ¶ 4 & Ex. 5; Merskin Decl. ¶ 11.

## STANDARD

Summary judgment is appropriate when the evidence shows "there is no genuine issue as

to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment must first

identify the parts of the record "which it believes demonstrate the absence of a genuine issue of

material fact." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (quotation

marks omitted). Should the moving party meet this initial burden, "the burden shifts to the non-

---

[1] Defendants challenge plaintiff's assertion on the basis that plaintiff does not support the statement in his declaration with personal knowledge, rendering his lay witness testimony inadmissible under Federal Rules of Evidence 602 and 701. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Similarly, Federal Rule of Civil Procedure 56(c)(4) requires that affidavits must be based on personal knowledge to carry weight on a motion for summary judgment. Plaintiff's testimony at issue speaks directly to his awareness of the university's intent to fire him. Fed. R. Evid. 701 (permitting lay witnesses to testify if the testimony is "rationally based on the witness's perception"). His statement therefore may be considered as part of the summary judgment record.

moving party to set forth . . . specific facts showing that there is a genuine issue for trial." *Id.* at 928. On a motion for summary judgment, a court views "the evidence in a light most favorable to the non-moving party[.]" *Id.* at 927. A claim will survive summary judgment if there is "evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

Defendants move for partial summary judgment, arguing that a reasonable jury could not find a procedural or a substantive due process violation based on the record before the Court. Even if there is a genuine dispute over material fact, defendants argue they deserve qualified immunity on plaintiff's procedural and substantive due process claims.

I. *Procedural Due Process*

a. *Merits*

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

PAGE 5 – OPINION AND ORDER

The parties do not dispute that plaintiff has a protected property interest in his continued employment because he was a tenured professor pursuant to a collective bargaining agreement that provides employees will only be fired for just cause. *See Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 921 (9th Cir. 2013) ("[G]overnment employees can have a protected property interest in their continued employment if they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause.") (emphasis omitted).

Unlike rigid legal rules, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Brewster*, 149 F.3d at 984 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 332 (9th Cir. 1995) ("The essential requirements of this pre-termination process are notice and an opportunity to respond.") (emphasis omitted). Moreover, courts are slow to find "trial-type proceedings are . . . constitutionally required" because "an agency has broad discretion in choosing the form of the proceeding that it will conduct." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1075 (9th Cir. 2015).

In the public employee context, generally government employers must provide "some kind of hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted). In most cases, the employer complies with procedural due process' pre-deprivation hearing requirements when the employer provides the

employee "oral or written notice of the charges against him, an explanation of the employer's

evidence, and an opportunity to present his side of the story." *Id.* at 545. The hearing "need not

be elaborate" because it does not need to "definitively resolve the propriety of the discharge" or

approximate a trial-like proceeding. *Id.*; *see Gilbert v. Homar*, 520 U.S. 924, 929 (1997)

(explaining "that a public employee dismissable only for cause was entitled to a *very limited*

hearing prior to his termination, to be followed by a more comprehensive post-termination

hearing") (emphasis added). Therefore, the pre-termination hearing need only serve as an

"initial check" to ensure the employee's discharge is "reasonable," *Gilbert*, 520 U.S. at 929

(quoting *Loudermill*, 470 U.S. at 545–46, and not "baseless or unwarranted," *id.* at 531 (quoting

*Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988)); *see also Clements*, 69 F.3d at 333

n.15 ("A pre-termination hearing . . . does not constitute an 'adjudication.'"). Moreover, courts

are more likely to hold a meager pre-termination process satisfied due process if the employer

provides a robust post-termination process. *Brewster*, 149 F.3d 971, 986 (9th Cir. 1998)

(explaining "meager" pre-deprivation hearing satisfies due process); *see generally Loudermill*,

470 U.S. at 546 (warning that to require robust pre-termination procedures "would intrude to an

unwarranted extent on the government's interest in quickly removing an unsatisfactory

employee").

     To determine whether a public employer offered an employee adequate process under the

Fourteenth Amendment, courts must weigh three factors.

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

PAGE 7 – OPINION AND ORDER

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Under the first factor, a plaintiff's interest in continued employment as a tenured employee is substantial and weighs in favor of requiring defendants to offer procedural safeguards. *Loudermill*, 470 U.S. at 543 ("[T]he significance of the private interest in retaining employment cannot be gainsaid" because of the "severity of depriving a person of the means of livelihood"); *see Gilbert*, 520 U.S. at 932 (explaining the length and finality of the deprivation affect courts' determination as to how much process is due). The first factor also considers the ultimate hardship plaintiff suffers because of the deprivation and not merely the size of the deprivation. *See Matthews*, 424 U.S. at 342 (explaining that "the possibility of access to private resources" and "other forms of government assistance" could justify fewer procedural protections before a deprivation). However, where post-termination process could provide plaintiff with reinstatement and back pay for an erroneous termination, the first factor does not weigh as strongly in favor of more process. *Cf. id.* at 340; *see also* Brady Decl. Ex 1 at 53 & 56 (stating that back pay, back benefits, and reinstatement are available under the collective bargaining agreement if an employee prevails in arbitration).

In an employment dispute, the third factor also usually weighs in favor of a more robust process. In a wrongful termination case, "some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision" because such cases "often involve factual disputes." *Loudermill*, 470 U.S. at 543; *see id.* ("Even where the facts are clear, the appropriateness or necessity of the discharge may not be[.]"). However, the mere fact that the employer could later recant its discipline does not make out a procedural due process violation. *Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("The Due Process Clause simply does not

PAGE 8 – OPINION AND ORDER

mandate that all governmental decision[-]making comply with standards that assure perfect, error-free determinations."). This is particularly so because "the Government has a much freer hand in dealing with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Heidt v. City of McMinnville*, 2015 WL 9484484, at *6 (D. Or. Dec. 29, 2015) (quoting *NASA v. Nelson*, 562 U.S. 134, 148 (2011)) (internal quotation marks omitted).

The weight of the third factor can shift when the defendant has unusually strong interests in speedy action. When a case involves a highly visible public employees whose job depends upon public trust, employers may under certain circumstances impose adverse employment actions without any pre-deprivation process. *Gilbert*, 520 U.S. at 930 ("[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause").

The Ninth Circuit held a fired teacher deserved no process before he was suspended without pay in *Mustafa v. Clark County School District*, 157 F.3d 1169, 1177 (9th Cir. 1998). There, a student filed a police report that charged the plaintiff with "Open and Gross Lewdness" that involved sexual misconduct. *Id.* at 1172. Four days later, the defendant school district suspended the plaintiff without pay. *Id.* The superintendent also recommended that the school board should quickly terminate the plaintiff. *Id.* The following week, the defendant offered a pre-termination hearing so the plaintiff could explain his side of the story. *Id.* at 1173. There was also a subsequent arbitration. *Id.* Even though the defendant ultimately reinstated the plaintiff because the student's charge could not be substantiated, the defendant did not violate procedural due process by suspending the plaintiff without any pre-deprivation process. *Id.* at 1177. The Ninth Circuit explained that because "the employee 'occupie[d] a position of great

public trust and high public visibility,'" the defendant offer[ed] a reasonably prompt post-deprivation hearing, and assurance exist[ed] that the defendant ha[d] "reasonable grounds" to support its decision, pre-deprivation process was unnecessary because the need for speedy action outweighed concerns of an erroneous deprivation. *Id.* at 1177 (quoting *Gilbert*, 520 U.S. at 932).

The Supreme Court has held that an employer may have no constitutional obligation to provide pre-suspension process when "an independent third party has determined that there is probable cause to believe the employee committed a serious crime[,]" such as when the plaintiff is arrested and formally charged. *Gilbert*, 520 U.S. at 934. In *Mustafa*, the plaintiff was neither arrested nor charged; however, the student filed a police report which, combined with the defendant's conversation with the student, provided sufficient assurance that the defendant had reasonable and not arbitrary grounds for the adverse employment action. *Mustafa*, 157 F.3d at 1177. In that case, the need for preserving public confidence in the school, compounded with the assurances of reasonableness provided by the student's complaint and defendant's investigation, outweighed the risk of erroneous deprivation.

*Mustafa* and *Gilbert* do not control the analysis here because they concerned the right to pre-deprivation process before suspension without pay, not the right to pre-deprivation process before termination. These cases do, however, illustrate how an employer's pressing need to take action can affect the *Mathews* balancing test. Here, the university's interest in protecting student safety, maintaining public confidence, avoiding Title IX liability, and minimizing the disruption to students' education are weighty and considerable. Further, like in *Mustafa*, defendants relied on a student complaint and an internal investigation before making the termination decision. Therefore, considering the totality of the circumstances, the Court finds the third factor weighs

PAGE 10 -- OPINION AND ORDER

heavily in favor of upholding the university's process as constitutionally adequate so long as it provided plaintiff the basic pre-termination protections of notice and an opportunity to present his side of the story.

Having concluded that the first *Matthews* factor favors more process and the third *Matthews* factor favors upholding the process provided as adequate, the Court turns to the second factor. The second factor is the "most important" because it considers "the risk of erroneous deprivation and the likely value of any additional procedures." *Gilbert*, 520 U.S. at 933. On this point, plaintiff points to a number of alleged deficiencies in the process. Specifically, plaintiff argues that (1) he was unfairly surprised by the university's decision to terminate his employment because he did not know the university considered the discipline before his January 16 meeting and did not have a meaningful opportunity to respond before the short January 20 deadline; (2) he could not view the original copies of the student complaints against him and had to rely on oral representations of the complaints; and (3) defendants' hostility is evidence that they predetermined the outcome of the process, thereby denying plaintiff any meaningful opportunity to be heard.[2]

---

[2] Plaintiff makes two other arguments that defendants violated plaintiff's procedural due process rights. First, plaintiff suggests the post-termination process was inadequate because his union withdrew from arbitration and defendants never offered a name-clearing hearing. However, these circumstances do not give rise to a due process claim. First, arbitrations can serve as a constitutionally sufficient substitute for a name-clearing hearing. *Mustafa*, 157 F.3d at 1179. Second, although it is certainly understandable that plaintiff is angry he was denied the right to participate in arbitration, that denial stems from actions taken by the union, not by defendants. Any claim plaintiff has regarding his ability to participate in arbitration, therefore, must be a claim against plaintiff's union for potentially shirking its fiduciary duties to represent its members in good faith. *See Armstrong v. Meyers*, 964 F.2d 948, 951 (9th Cir. 1992) (holding that the availability of arbitration can satisfy due process even if the union's decision prevents an employee from actually participating in arbitration); *see also Vaca v. Sipes*, 386 U.S. 171, 190 (1967) (explaining unions' duties to collective bargaining unit members under the Fair Labor

PAGE 11 – OPINION AND ORDER

First, plaintiff argues that defendants violated his procedural due process rights by not giving him sufficient notice that the university considered terminating their employment relationship. In order to satisfy procedural due process' "low" notice requirements, defendants must take "reasonably calculated" steps to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir.2008) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). As such, mere notice of the charges against an employee will not suffice. *See Matthews v. Harney Cnty. Sch. Dist. No. 4*, 819 F.2d 889, 893 (9th Cir. 1987) (holding that a public employer violates due process if the termination comes before the employee "was ever aware that her job was in jeopardy"). Notice that the university specifically contemplated firing plaintiff is an essential part of due process because plaintiff must be given an opportunity to "present reasons . . . why a *proposed action* should not be taken should not be taken." *Novak v. United States*, 795 F.3d 1012, 1023 (9th Cir. 2015) (quoting *Loudermill*, 470 U.S. at 546) (emphasis added and alterations normalized).

Defendants persuasively argue notice is constitutionally adequate because they informed plaintiff about the impending termination on January 16, five days before it took effect, and

Relations Act). This is consistent with precedent explaining that a plaintiff's decision to voluntarily withdraw from process offered does not manufacture a procedural due process claim. *Peacock v. Bd. of Regents of Univs. & State Coll. of Ariz.*, 597 F.2d 163, 166 (9th Cir. 1979).

Second, plaintiff argues that because defendants are unable to establish that they appropriately fired plaintiff for just cause under the collective bargaining agreement, defendants violated plaintiff's procedural due process rights. It is true that plaintiff's collective bargaining agreement creates the protected property interest that triggers procedural due process protections here, but that does not mean the collective bargaining agreement determines what process was *constitutionally* due. If plaintiff "believes his termination was in breach of contract, his recourse lies in a breach of contract claim, not in a procedural due process claim." *Servo v. Junginger*, 2014 WL 3891751, at *12 (D. Or. Aug. 6, 2014).

PAGE 12 – OPINION AND ORDER

plaintiff could submit additional evidence or testimony until January 20. Defendants did not owe a duty to notify plaintiff that they were considering his termination before they finished their investigation. *See Loudermill*, 470 U.S. at 543 (explaining that notice and "some opportunity" to rebut the charge before the termination is effective satisfy procedural due process). Plaintiff does not dispute he was fully aware of the university's intent to fire him before the termination took effect and as such, cannot reasonably argue he did not receive notice of the termination.

Plaintiff contends the notice was constitutionally inadequate because the university gave him too short a period to provide additional information. Plaintiff characterizes defendants' deadline as unreasonable since it only provided plaintiff with one full business day to respond. Defendants notified plaintiff of the termination decision on January 16, a Friday. Although plaintiff had four days to respond to the decision, those four days included a weekend and a holiday (Martin Luther King, Jr. Day.)

Defendants rejoin that plaintiffs' sham affidavit fails to raise a genuine dispute over material fact that he had sufficient time to respond meaningfully. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit that contradicting his prior deposition testimony" because summary judgment loses its utility if courts cannot screen out sham issues of fact). Defendants explain that even though plaintiff's declaration proffered that he did not have sufficient opportunity to respond, plaintiff recognized in a deposition that defendants offered him some opportunity after receiving the termination notice on January 16. Walkup Decl. Ex. 1 at 5 Mar. 15, 2017.

PAGE 13 – OPINION AND ORDER

Under the appropriate caution against aggressively applying the sham affidavit rule, the Court finds defendants' argument unavailing. Courts must apply this rule with all due caution because "the rule . . . threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009); *see Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (explaining that the sham affidavit rule "is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment"). As such, not every contradiction gives just cause for the Court to strike inconsistent portions of plaintiff's allegedly sham affidavit. *Yeager*, 693 F.3d at 1080. Only those inconsistencies that are "clear and unambiguous" justify striking the affidavit. *Id.* (quoting *Van Asdale*, 577 F.3d at 998–99). Here, the two statements do not clearly and unambiguously conflict because plaintiff's deposition testimony speaks to defendants' offer of *some* time to respond and plaintiff's affidavit speaks to assertion that he did not have *sufficient* time to meaningfully respond. These two statements are not irreconcilable. Therefore, the Court rejects defendants' argument that plaintiff submitted a sham affidavit.

However, plaintiff's assertion that more time was necessary to respond is nonetheless unpersuasive. Plaintiff's deposition testimony indicates he was advised not to respond to defendants' offer to submit additional evidence. Walkup Decl. Ex. 1 at 4 Mar. 15, 2017. Because opting out of process afforded cannot give rise to a procedural due process claim, plaintiff fails to raise a genuine dispute of material fact that more time would have added value to an allegedly deficient process. *Reinlasoder v. City of Colstrip*, 657 F. App'x 636, 638–39 (9th

PAGE 14 – OPINION AND ORDER

Cir. 2016); *Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981); *Peacock*, 597 F.2d at 166.

Second, plaintiff argues that without written explanation of the allegations against him, he did not have a meaningful opportunity to respond. Defendants respond they exhausted their due process requirements by providing a detailed oral summary of the evidence against plaintiff as well as a written summary of their findings. Walkup Decl. Ex. 1 at 5–14 Mar. 15, 2017; Blandy Decl. Ex. 3 at 1. While the Supreme Court recognized that generally a "tenured public employee is entitled to oral or written notice of the charges against him [and] an explanation of the employer's evidence," *Loudermill*, 470 U.S. at 546, a summary of evidence may, "in certain circumstance, provide sufficient notice to allow a meaningful opportunity to respond[,]" *ASSE Int'l, Inc.*, 803 F.3d at 1077. However, broad summaries of allegations do not always provide sufficiently meaningful opportunity to respond to the evidence, particularly where the government declines to provide "crucial details" and asserts that the allegations come from "confidential sources." *Id.* Evidence that is more detailed would provide plaintiff a greater opportunity to find inconsistencies and weaknesses in defendants' reasoning, decreasing the risk of erroneous deprivation. Moreover, it appears defendants could have provided access to the actual complaints without incurring any substantial burden. Plaintiff therefore raises a genuine dispute over material fact that defendants deprived him of a meaningful opportunity to respond to the charges and evidence against him.

Finally, plaintiff argues that the process afforded violated procedural due process because defendants must offer some degree of an open mind to hearing and evaluating plaintiff's arguments in order to comply with basic fairness. *See Withrow v. Larkin*, 421 U.S. 35, 46–47

(1975) (explaining that the due process right to a fundamentally fair tribunal "applies to administrative agencies"). In order to provide a meaningful opportunity to safeguard a plaintiff's protected liberty or property interests, defendants cannot offer process as a mere formality and cannot listen to plaintiff's evidence with a tin ear because a fundamentally fair hearing requires some possibility of altering defendants' decision. *Brady v. Gebbie*, 859 F.2d 1543, 1555 (9th Cir. 1988); *Matthews v. Harney County*, 819 F.2d at 893–94 ("Due process of law is not present where the state has gone through the mechanics of providing a hearing, but the hearing is totally devoid of a meaningful opportunity to be heard.") (quoting *Washington v. Kirksey*, 811 F.2d 561, 564 (11th Cir. 1987)) (alterations normalized).

In the procedural due process context, courts presume government defendants exercise rational, good faith decision-making. In order to "overcome a presumption of honesty and integrity in those serving as adjudicators," plaintiff must show either that the decision-maker was actually biased or that "the probability of actual bias on the part of the judge or decision[-]maker is too high to be constitutionally tolerable." *Withrow*, 421 U.S. at 47.

To show actual bias, plaintiff must show decision-makers "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) *see Stivers v. Pierce*, 71 F.3d 732, 744 (9th Cir. 1995) (explaining some partiality or hostility standing alone does not rebut the presumption of honesty in government decision-making); *United States v. State of Or.*, 44 F.3d 758, 772 (9th Cir. 1994) (explaining that "generalized suspicion of inhospitable treatment . . . , in itself," is insufficient to establish a due process violation).

"Supreme Court precedent reveals only three circumstances in which an appearance of bias—as opposed to evidence of actual bias"—violates procedural due process. *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007). There is an intolerable risk that decision-makers will unreasonably prejudge an issue when they have "direct, personal, substantial pecuniary interest in reaching a conclusion against one of the" participants, are "embroiled in a running, bitter controversy" with one of the participants, or meaningfully participated in "the accusatory process." *Id.* (citations and quotation marks omitted) (alterations normalized); *see In re Murchison*, 349 U.S. 133, 136 (1955) (explaining that due process reflects the maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome").

Because plaintiff does not come forward with substantial evidence that would support a finding of apparent bias, plaintiff must come forward with evidence of actual bias strong enough to overcome the presumption of honesty in decision-making of government officials.

On this point, plaintiff testifies to the hostility during the December 18, 2014 meeting and bemoans that "[a]ny attempt at an answer I provided became contested." Pavel Decl. ¶ 5. Plaintiff also testifies that an investigator said, "[w]e're going to find a pattern; you might as well admit it." *Id.* ¶ 6. Even assuming that testimony could support a finding of actual bias, it would be insufficient to support a due process claim because it shows bias on the part of the investigators and not on the part of the final decision-makers. *See Lumbreras v. Roberts*, 319 F. Supp. 2d 1191, 1211 (D. Or. 2004) (granting summary judgment on a procedural due process claim because it was "undisputed that the ultimate decision-makers acted free of the influence of" the allegedly biased actor), *aff'd*, 156 F. App'x 952 (9th Cir. 2005); *Holder*, 2016 WL

PAGE 17 – OPINION AND ORDER

1725299, at *3 (finding insufficient evidence that the final decision-maker, rather than the plaintiff's direct supervisor, was biased).

In his declaration, plaintiff also says an unidentified person told him that no reconsideration was possible after the January 16 meeting. Pavel Decl. ¶ 13. That statement is inadmissible hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Orr v. Bank of America, NY & SA*, 285 F.3d 764, 778 (9th Cir. 2002) (quoting Fed. R. Evid. 801(c)) (internal quotation marks omitted). Hearsay is inadmissible "unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807." *Id.* The mere fact that a litigant offers hearsay evidence does not prevent that evidence from being considered on summary judgment "so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony[,]" but the litigant bears the burden of explaining that the evidence would be admissible in some form at trial. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). Without assurance that the evidence would be admissible, it is insufficient to rebut defendants' presumption of good faith government decision-making. *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1048 & 1058 (D. Or. 2010) (explaining "deference to the non-moving party has limits" because "speculative testimony" or a scintilla of evidence is insufficient to stave off a motion for summary judgment under Federal Rule of Civil Procedure 56(c)(1)'s requirement that the non-movant point to specific facts).

Federal Rule of Civil Procedure 56(e) gives courts discretion to temper the harsh results of losing a motion for summary judgment on evidentiary technicalities by providing litigants an

PAGE 18 – OPINION AND ORDER

opportunity to cure deficiencies in the record. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) ("When a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency."). While the Court could provide another opportunity for plaintiff to properly support his assertion, the Court declines to exercise discretion under 56(e) because it would be futile. As the Court will explain below, even if plaintiff were able to raise a genuine dispute of material fact on this point, the Court dismisses plaintiff's procedural due process claim on the basis that defendants deserve qualified immunity.

Finally, plaintiff points to Ms. Merskin's testimony that many of OAAEO's investigations proceed under a presumption of guilt and under motivated reasoning, invariably lead to discipline. Merskin Decl. ¶ 10 ("[G]iven my past experience with the [OAAEO's] process, and the hostile, accusatory tone of the December meeting, it seemed to me a foregone conclusion that the investigation would determine that he was guilty as charged and he would be disciplined in some way."). Although this is indirect, relatively weak evidence of actual bias, plaintiff's affidavit from a third party could raise a triable issue regarding whether defendant had a meaningful opportunity to change the termination decision between January 16 and January 21. *But cf. Liteky*, 510 U.S. at 555 (holding, in the context of judicial proceedings, that "opinions formed . . . on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings do not constitute a basis for a bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

On the merits, plaintiff's procedural due process claim would survive summary judgment because there are genuine issue of material fact regarding whether the decision-makers were

PAGE 19 – OPINION AND ORDER

biased and whether access to the written charges against him would have improved his ability to meaningfully respond to those charges.  Nonetheless, as explained below, defendants are entitled to summary judgment because of qualified immunity.

      b.    *Qualified Immunity for Procedural Due Process*

The doctrine of qualified immunity shields public officials from bearing the burden of suit for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Davis v. Scherer*, 468 U.S. 183, 195 (1984) ("The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages[.]"). Moreover, the justifications for granting qualified immunity are strongest where officials must act "swiftly and firmly," *Scheuer v. Rhodes*, 416 U.S. 232, 246 (1974), *abrogated on other grounds by Harlow*, 457 U.S. 800, because of "the danger that the threat of . . . liability would deter [officials'] willingness to execute [their duties] with the decisiveness and the judgment required by the public good[,]" *id.* at 240.

> Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case.

*al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)), *rev'd on other grounds,* 536 U.S. 731 (2011).  Under either prong of the inquiry, courts may not import disputed material facts. *Tolan*, 134 S. Ct. at 1866.  As explained above, taking the evidence in

the light most favorable to plaintiff, he has shown a violation of his procedural due process rights. The question is whether those rights were clearly established.

The "far-reaching" protections of qualified immunity extend to officials who make reasonable mistakes. *Brewster*, 149 F.3d at 977; *see Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (explaining that qualified immunity "gives ample room for make mistaken judgments" and applies where the legality of the conduct is a close call because "officials should not err always on the side of caution") (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986) and <u>*Davis v. Scherer*</u>, 468 U.S. 183, 196 (1984)). The "government interest in avoiding unwarranted timidity on the part of those engaged in the public's business [is] the most important special government immunity-producing concern," *Filarsky v. Delia*, 566 U.S. 377, 390 (2012) (quoting *Richardson v. McKnight*, 521 U.S. 399, 409 (1997)) (internal quotations omitted), because "holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties[,]" *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). As such, "[t]o determine whether a constitutional right has been clearly established for qualified immunity purposes, we must survey the legal landscape and examine those cases that are most like the instant case" to find whether the law is so clear that no reasonable official would be unaware of the risk of violating plaintiff's rights. *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010) (quoting *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996)) (quotations omitted). The defendant need not identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

PAGE 21 -- OPINION AND ORDER

Procedural due process requires a fact-specific and mercurial inquiry.  *See Gilbert*, 520 U.S. at 930 (explaining any categorical rule in the procedural due process context is "indefensible").  As the Ninth Circuit has explained

> [F]or all its consequence, due process has never been, and perhaps never can be, precisely defined.  Rather, the phrase expresses the requirement of fundamental fairness, a requirement whose meaning can be as opaque as its importance is lofty.  As a result, deciphering and applying the Due Process Clause is, at best, an uncertain enterprise. . . . After all, unlike some legal rules, due process is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . One cannot accurately predict how any specific case will be decided.

*Brewster*, 149 F.3d at 983–84 (quotation marks and citations omitted).  As such, procedural due process claims "can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent."  *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989) (quotation marks omitted).

Plaintiff makes no arguments concerning qualified immunity.  The Court concludes defendants did not violate a clearly established right.  It is not at all clear how much pre-termination process plaintiff deserved because of the visibility of plaintiff's position, the necessity for public confidence to do his job effectively, the student safety concerns, and the robust post-termination arbitration process offered to plaintiff.  *See Brewster*, 149 F.3d at 984 (explaining that the Supreme Court is expanding the rule that pre-deprivation hearings are not always required).  While *Gilbert* and *Mustafa* occurred in the context of public employers suspending employees without pay rather than terminating them, the case law is opaque as to how these precedents apply in the termination setting given the university's particular interest in fostering student safety and a productive learning environment.  *See Sinaloa Lake Owners Ass'n v. Tudor*, 882 F.2d 1398, 1406 (9th Cir. 1989) ("The Supreme Court has repeatedly held that

summary governmental action taken in emergencies and designed to protect the public health, safety and general welfare does not violate due process."), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311, 1324 (9th Cir. 1996). It is not clearly established that plaintiff was entitled to any more pre-termination process than he received.

Even assuming defendants violated plaintiff's due process rights by deciding to provide only an oral summary of the evidence at the January 16 meeting, that decision is a reasonable mistake based on the unclearly defined law. *Brewster*, 149 F.3d at 977 ("[I]n order to ensure that government officials receive necessary guidance, courts should focus the qualified immunity inquiry at the level of implementation."). In *Loudermill*, 470 U.S. at 546, the Supreme Court required employers to provide oral or written notice of the changes against plaintiff and "an explanation of the employer's evidence" at the pre-termination hearing. Here, the university asked detailed and thorough questions to solicit plaintiff's responses to each and every allegation the student made in her report to the police. *See* Thornton Decl. Ex. 2 (doc. 66); Walkup Decl. Ex. 1 Mar. 15, 2017. The university also provided plaintiff with a written summary of the factual findings supporting the termination decision. Blandy Decl. Ex. 3 at 1. That process reasonably complies with *Loudermill*. Further, defendants reasonably could have concluded that fewer procedural protections were necessary in light of the student's police report. *Mustafa*, 157 F.3d at 1177 (explaining a police report filed by a student that a teacher engaged in sexual misconduct serves as substantial assurance that adverse employment action is not baseless or unwarranted). Not every reasonable official would be on fair notice that a detailed oral recounting is insufficient because the pre-termination process is not an adjudication but merely serves as an initial check to ensure the university's decision is based on some evidence and not

PAGE 23 – OPINION AND ORDER

arbitrary. *See Dosier v. Cent. Oregon Cmty. Coll.*, 2015 WL 6121907, at *3 (D. Or. Oct. 14, 2015) (explaining a pre-dismissal letter stating the reasons for termination and the opportunity to respond to those reasons satisfied procedural due process).

Moreover, plaintiff's arguments that defendants violated procedural due process by depriving him of fair tribunal are unavailing in the qualified immunity context because the law is not clearly established given the particular contours of this case. Even though it "is well-settled that the Due Process Clause prevents the state from depriving a plaintiff of a protected property interest without a fair trial in a fair tribunal," *Stivers*, 71 F.3d at 741 (quotation marks omitted), case law does not clearly establish that a pre-termination process requires unbiased arbiters when plaintiff has access to a robust post-termination arbitration under his collective bargaining agreement. As the Ninth Circuit explained, "the decision[-]maker in a *pre-termination* hearing need not be impartial, so long as an impartial decision[-]maker is provided at the post-termination hearing" because the pre-termination process is not a full adjudication on the merits. *Clements*, 69 F.3d at 333 n.15 (emphasis in original); *Sadid v. Vailas*, 936 F. Supp. 2d 1207, 1216 & 1231 (D. Idaho 2013) (holding that participation of university president in pre-termination proceedings did not violate clearly established law even though the terminated employee had personally attacked the president's leadership in the press).[3]  Therefore, because

---

[3] Because plaintiff does not come forward with substantial evidence to rebut the presumption of honesty in government decision-making as to plaintiff's post-termination process, the Court cannot find that the arbitrator appointed under plaintiff's collective-bargaining agreement would not have ferreted out and corrected any biased decision-making in plaintiff's pre-termination process. Out-of-circuit case law also finds no due process violation based on bias in the plaintiff's pre-termination process when the plaintiff has post-termination process available, if the plaintiff does not actually proceed to post-termination hearings. *Sutton v. Bailey*, 702 F.3d 444, 449 (8th Cir. 2012); *Farhat v. Jopke*, 370 F.3d 580, 597 (6th Cir. 2004). As the Fifth Circuit explained, the "state is obligated only to make available the means by which [the

no clearly established law put defendants on fair notice that plaintiff deserved more process, the Court grants defendants summary judgment on plaintiff's procedural due process claim on the grounds defendants deserve qualified immunity.

II.    *Substantive Due Process*

Substantive due process prohibits a government from depriving "a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007), *aff'd sub nom.* 553 U.S. 591 (2008) (quoting *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004)) (ellipsis in original). "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). Occupational freedom to practice the profession of one's choice is a protected liberty interest, even though substantive due process does not protect the right to be in any particular job. *Engquist*, 478 F.3d at 996. However because not every tort gives rise to a substantive due process violation, substantive due process rights for occupational liberty only give rise to liability in the "extreme cases," such as when a government creates a "blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." *Id.* at 997–98 (citation and internal quotation marks omitted); *see Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 531 (7th Cir. 2000) (explaining that

---

employee] can receive redress for the deprivations." *Schaper v. City of Huntsville*, 813 F.2d 709, 715–16 (5th Cir. 1987) (quoting *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)) (quotation marks omitted).

PAGE 25 – OPINION AND ORDER

plaintiffs must show that "the character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities."). Public employers' stigmatizing statements that merely cause "reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession" are not sufficient to state a due process deprivation. *Blantz*, 727 F.3d at 925 (9th Cir. 2013) (quotation marks omitted). Ultimately, plaintiff must show defendants were arbitrary and had no reason for effectively blacklisting him from his chosen profession to stave off defendants' summary judgment motion.[4] *FDIC v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991) (explaining that plaintiffs must show the government reasoning has "no substantial relation to the public health, safety, morals, or general welfare") (quoting *Lebbos v. Judges of Super. Ct., Santa Clara Cnty.*, 883 F.2d 810, 818 (9th Cir. 1989)).

There are two reasons why plaintiff fails to raise a genuine dispute over material fact that preserves a question for the jury. First, plaintiff's evidence of blacklisting falls short of "the extremely high bar to make out a substantive due process violation." *Boyd v. Edwards*, 2015 WL 3407890, at *2 (D. Or. May 27, 2015). Plaintiff suggests that since publication of the charges against him, he suffered irreparable harm to his reputation and lost speaking

---

[4] Depending on the right at issue, courts may inquire into the government's actual reasons or only consider "whether the government *could* have had a legitimate reason for acting as it did." *Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004), *as amended* (Oct. 18, 2004) (quoting *Wedges/Ledges*, 24 F.3d at 66) (emphasis in original). The standard depends on whether plaintiff alleges a violation of a fundamental right. *Id.* Although there is no precedent directly on point, it appears that rational basis review would apply here because the liberty interest at issue here is not a fundamental right. *Cf. Country Classic Dairies, Inc. v. State of Mont., Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1998) (noting Supreme Court precedent holding that the "right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause").

opportunities, a grant, a contract, and spots on doctoral committees. Pavel Decl. ¶¶ 22–24. However, "some adverse effect on" plaintiff's "job prospects" is insufficient to give rise to a substantive due process claim. *Engquist*, 478 F.3d at 998 (quoting *Bordelon*, 233 F.3d at 531). Instead, plaintiff must show it is "virtually impossible . . . to find new employment in" plaintiff's chosen field. *Id.* (quoting *Bordelon.*, 233 F.3d at 531). In *Engquist*, the plaintiff could not find work after applying for approximately 200 jobs. *Id.* at 991. The Ninth Circuit found no rational jury could find the defendant's "defamatory statements to two or three other people in the industry" had caused the plaintiff's difficulty finding work, holding instead that the plaintiff merely showed she had difficulty finding a job in the same highly specialized field in Oregon. *Id.* at 999. Here, plaintiff concedes he has not applied to any jobs as there have been no openings. Pavel Dep. 215:8–16. As such, plaintiff fails to raise a genuine dispute over material fact that defendants essentially blacklisted him from teaching.

Second, the Court must grant defendants qualified immunity because the law is not clearly established. As one court in the Ninth Circuit explained, there is a circuit split and uncertainty within the Ninth Circuit as to whether the same actor must deprive plaintiff of his liberty interest and publicize stigmatizing information. *See Eberhard v. California Highway Patrol*, 73 F. Supp. 3d 1122, 1131 (N.D. Cal. 2014). Here, none of the named defendants appears on the e-mail chain with the Register Guard that led to the release of the police report alleging plaintiff sexually harassed a student. *See* Thornton Decl. Ex. 1. In light of the ambiguity in the law, that evidence is fatal to plaintiff's claim and qualified immunity bars liability.

PAGE 27 – OPINION AND ORDER

## CONCLUSION

The Court GRANTS defendants' motion for partial summary judgment (doc. 35). Plaintiff's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this 3RD day of April 2017.

Ann Aiken
United States District Judge

PAGE 28 -- OPINION AND ORDER