**Amanda M. Walkup, OSB 934508**
awalkup@hershnerhunter.com
**Alexandra P. Hilsher, OSB 114218**
ahilsher@hershnerhunter.com
Hershner Hunter, LLP
180 East 11th Avenue
P.O. Box 1475
Eugene, OR 97440
Telephone: (541) 686-8511
Facsimile: (541) 344-2025

Of Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DISTRICT

| | |
|---|---|
| **CHIXAPKAID DONALD MICHAEL PAVEL**; | Case No. 6:16-CV-00819-AA |
| Plaintiff, | |
| v. | **DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW** |
| **UNIVERSITY OF OREGON; DOUG BLANDY; PENELOPE DAUGHERTY; ANNIE BENTZ; RANDY KAMPHAUS; JULIET A. BAXTER; JANNE UNDERRINER; JASON YOUNKER;** and **BRIAN KLOPOTEK**; | |
| Defendants. | |

## LR 7-1 CERTIFICATION

Counsel for Defendants certifies that in accordance with Local Rule 7-1(a), the parties made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so.

## MOTION

Pursuant to Fed. R. Civ. P. 56, Defendants move for an order of summary judgment and dismissal of Plaintiff's claims with prejudice, as follows:

1. In Individual Defendants' favor and dismissing Plaintiff's Third Claim for Relief;

2. In Individual Defendants' favor and dismissing Plaintiff's Fourth Claim for Relief, Count 1;

3. In Defendant University of Oregon's favor and dismissing Plaintiff's Fourth Claim for Relief, Count 2;

4. In Defendant University of Oregon's favor and dismissing Plaintiff's Fifth Claim for Relief;

5. An award of reasonable attorney fees pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. §1988; and

6. Such lesser orders of summary judgment in Defendants' favor as the Court deems appropriate.

This Motion is supported by the Memorandum of Law, the declarations of Doug Blandy and Amanda M. Walkup and the exhibits attached thereto, and the previously filed declarations of Doug Blandy, William D. Brady II, and Penny Daugherty.

## MEMORANDUM OF LAW

### I. Introduction

Plaintiff was employed by Defendant University of Oregon (the "University") as a tenured professor in the College of Education from September 16, 2010, until January 21, 2015. His employment was terminated for violating the University's policy prohibiting sexual harassment. Specifically, Plaintiff subjected a female undergraduate student to unwelcome and nonconsensual contact and comments of a sexual nature. Plaintiff alleges that his termination was wrongful, and Plaintiff brings this action against the University and three of its current employees: Doug Blandy,

Penelope Daugherty, and Randy Kamphaus (collectively the "Individual Defendants").[1] He has filed race and gender discrimination claims against the University pursuant to Title VII; a race discrimination claim against the Individual Defendants pursuant to 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983");[2] and a First Amendment retaliation claim against the Individual Defendants pursuant to Section 1983.[3] The University moves for summary judgment on Plaintiff's Title VII claims. The Individual Defendants each move for summary judgment on Plaintiff's Section 1981 claim and First Amendment retaliation claim. For the reasons that follow, the University and Individual Defendants are entitled to summary judgment.

II. **Facts**

Plaintiff was a tenured professor at the University. First Amended Complaint ("Complaint"), ¶ 4. When the acts underlying this case occurred, Plaintiff was a member of United Academics of the University of Oregon, American Association of University Professors – American Federation of Teachers, AFL-CIO (the "Union"), and the terms and conditions of his employment were subject to the collective bargaining agreement between the University and the Union (the "CBA"). Declaration of William D. Brady II filed in support of Defendants' First Motion for Partial Summary Judgment, Court Docket No. 39, ("Brady Dec."), ¶ 3, Ex. 1. At all material times, the University employed the Individual Defendants. *See generally* Complaint.

The Harassment Investigation commenced on November 17, 2014, after a female undergraduate student filed a formal grievance with the University's Office of Affirmative Action and Equal Opportunity ("OAAEO"). Declaration of Penelope Daugherty filed in support of

---

[1] Plaintiff's Amended Complaint named five additional individuals as defendants. However, those defendants were dismissed from the lawsuit on June 21, 2017 and June 25, 2017. Court Docket Nos. 74 and 75.

[2] Although Plaintiff's claim for race discrimination against the Individual Defendants is brought pursuant to Section 1983, the substantive basis for the claim is Section 1981. For clarity, we refer to the claim as the "Section 1981" claim throughout.

[3] Plaintiff's Amended Complaint also alleged a procedural due process claim and substantive due process claim pursuant to Section 1983. Those claims were previously dismissed on summary judgment. Court Docket No. 73.

Page 3 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Defendants' First Motion for Partial Summary Judgment, Court Docket No. 38, ("Daugherty Dec."), ¶ 3. On November 20, 2014, the University placed Plaintiff on paid administrative leave during the investigatory period, consistent with the terms of his CBA. *Id*. at ¶ 3, Ex. 2; *see also* Brady Dec. at Ex. 1 (Article 24, Section 7) (authorizing administrative leave for faculty member during investigation).

On December 18, 2014, OAAEO investigators, including Defendant Penelope Daugherty, Director of OAAEO, interviewed Plaintiff regarding the student's allegations so he could provide his side of the story. Daugherty Dec., ¶ 4. A Union representative, Deb Merskin, also attended the meeting. *Id*. At the interview, Plaintiff was informed that he could also provide a written response to be considered as part of the Harassment Investigation by January 6, 2015. *Id*. Plaintiff chose not to submit a written statement. *Id*.

On January 16, 2015, following conclusion of the Harassment Investigation, Defendant Doug Blandy, Senior Vice Provost for Academic Affairs; William D. Brady II, Senior Director of Employee and Labor Relations[4]; and Defendant Randy Kamphaus, Dean of the College of Education, met with Plaintiff and two Union representatives, David Cecil and Deb Merskin. Blandy First Dec., ¶ 4. The purpose of the January 16, 2015, meeting was to provide Plaintiff written notice of the findings of the Harassment Investigation and the University's proposed discipline. *Id*.; Brady Dec. at Ex. 1 (Article 24, Section 5) ("The University will provide written notice and an opportunity to respond prior to termination of a bargaining unit faculty member[.]"). The University notified Plaintiff in writing that it found he had violated the University's sexual harassment policy by "engag[ing] in unwelcome verbal and physical conduct of a sexual nature towards a UO student, which has given rise to an intimidating, hostile and offensive environment for that student, interfering with the student's right to equal access to her education." Blandy First Dec., ¶ 5, Ex. 3. The University further specified that Dr. Pavel's conduct included "[u]nwelcome touching of a student's back, buttocks, and underwear; [u]nwelcome [kissing] of a student on the

---

[4] Mr. Brady is now the Assistant Vice President of Employee and Labor Relations. Brady Dec., ¶ 1.

hand, cheek, and forehead; [i]nappropriate comments of a sexual nature to a student including inquiring whether the student was in a relationship and remarking on the student's appearance after having her stand in front of a mirror." Blandy First Dec., ¶ 5; *see also* Blandy Second Dec., Ex. 1, p. 32-33.

Although given the opportunity, Plaintiff made no comments at the January 16, 2015, meeting. Blandy First Dec., ¶ 6; Deposition of CHIXapkaid Donald Michael Pavel ("Pavel Depo."), Vol. 2, 169:5-13[5]. The University gave Plaintiff until 5:00 p.m. on January 20, 2015, to provide a written response or relevant evidence, but he did not. Blandy First Dec., ¶ 6. Nor did Plaintiff request an extension of time to provide additional evidence. *Id*. The University terminated Plaintiff's employment, effective January 21, 2015. *Id*. Defendant Blandy made the decision to terminate Plaintiff's employment on behalf of the University. Deposition of Doug Blandy ("Blandy Depo."), 21:1-3.

The University terminated Plaintiff's employment on January 21, 2015, after an investigation found that Plaintiff violated the University's sexual harassment policy by subjecting a female undergraduate student to unwelcome and nonconsensual contact and comments of a sexual nature (the "Harassment Investigation"). Declaration of Doug Blandy filed in support of Defendants' First Motion for Partial Summary Judgment, Court Docket No. 37, ("Blandy First Dec."), ¶ 3; *see also* Declaration of Doug Blandy in support of Defendants' Second Motion for Summary Judgment ("Blandy Second Dec."), ¶ 5, Ex. 1, p. 32-33.

On May 5, 2015, Plaintiff filed a grievance under the CBA regarding his termination. Brady Dec., ¶ 4, Ex. 4. Plaintiff asserted that his termination was without just cause, in part because the student's allegations of sexual harassment were not true. *Id*. at ¶ 4. An arbitration hearing was ultimately scheduled for February 22, 2016. Had the arbitration hearing proceeded, the parties, including Plaintiff, would have had an opportunity to call witnesses, offer exhibits, and

---

[5] Excerpts of the depositions of CHIXapkaid Donald Michael Pavel and Doug Blandy are attached to the Declaration of Amanda M. Walkup in Support of Defendants' Second Motion for Partial Summary Judgment ("Walkup Dec.").

make arguments, and the arbitrator would have ruled on whether the University had just cause to terminate Plaintiff's employment. *Id*. However, Plaintiff withdrew his grievance 72 hours before the arbitration was scheduled to start. As a result, the arbitration hearing was cancelled. *Id*. at ¶ 4, Ex. 5. Plaintiff ultimately filed this action.

III. **Discussion**

    A.    **Summary judgment standard**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the moving party identifies parts of the record "which it believes demonstrate the absence of a genuine issue of material fact . . . the burden shifts to the non-moving party to set forth . . . specific facts showing that there is a genuine issue for trial." *F.T.C. v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal citations and quotation marks omitted). The court views the evidence in the light most favorable to the non-moving party. *Id*. at 927. However, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

    B.    **The University is entitled to summary judgment on Plaintiff's Title VII claims for race and gender discrimination.**

In support of his Title VII claims, Plaintiff alleged in his Amended Complaint that he was terminated because he identifies as an American Indian male. Amended Complaint, ¶¶ 5, 69. As explained below, the University is entitled to summary judgment on those claims because there is no evidence of race or gender discrimination, and indeed Plaintiff admits he has no such evidence. Therefore, he cannot establish a prima facie case or otherwise create a question of fact as to the University's motivation for terminating his employment. Further, even if Plaintiff could establish a prima facie case, he cannot rebut the University's legitimate, non-discriminatory reason for terminating his employment—that he violated the University's policy prohibiting sexual

harassment by subjecting a female undergraduate student to unwelcome and nonconsensual contact and comments of a sexual nature. Blandy Second Dec., Ex. 1, p. 32-33. Accordingly, the University is entitled to summary judgment as to Plaintiff's Title VII claims for race and gender discrimination.

      1.    **Legal standard**

The legal standard applied to Title VII claims for race and gender discrimination is the same. *Compare Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1282 (9th Cir. 2017) (gender discrimination), *with Reynaga v. Roseburg Forest Products*, 847 F.3d 678 (9th Cir. 2017) (race discrimination). To establish a case of race or gender discrimination under Title VII, a plaintiff must offer evidence that gives rise to "'an inference of discrimination in whatever manner is appropriate in the particular circumstances.'" *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985)). One way to do so is by establishing a prima facie case of discrimination under the burden-shifting analysis presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Reynaga*, 847 F.3d at 690.

Under the *McDonnell Douglas* framework, a prima facie case of discrimination is established if a plaintiff puts forth evidence that "(1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Id*. at 690-91 (citing *Hawn*, 615 F.3d at 1156; *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). Though the degree of proof required to establish a prima facie case is minimal and does not rise to the level of a preponderance of the evidence, *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002), a plaintiff cannot offer zero evidence and be said to have established a prima facie case, *see Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 706-07 (S.D. Tex. 2012); *Hawn*, 615 F.3d at 1156.

If a plaintiff establishes a prima facie case under the *McDonnell Douglas* framework, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action. *Hawn*, 615 F.3d at 1155. The burden at this stage is not high for a defendant; rather, "the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259-60 (1981).

If the defendant explains the nondiscriminatory reasons for its actions, the burden shifts back to the plaintiff, who must raise a genuine issue of material fact as to whether the defendant's legitimate, non-discriminatory reason is merely a pretext for unlawful discrimination. *Hawn*, 615 F.3d at 1155-56. At this stage, a plaintiff's "evidence must be both specific and substantial to overcome the legitimate reasons put forth by" the defendant. *Aragon*, 292 F.3d at 659.

Alternatively, if a plaintiff chooses to prove his case outside the *McDonnell Douglas* framework, he may do so by producing evidence demonstrating that a discriminatory reason more likely than not motivated the defendant. *Reynaga*, 847 F.3d at 691 (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)).

    2.    **Plaintiff cannot establish a prima facie case for race or gender discrimination or create a question of fact as to the University's motivations in terminating his employment.**

As noted above, Defendant Blandy was the individual at the University charged with making employment decisions regarding tenured professors, including Plaintiff. Blandy Depo. at 9:19-10:5; 21:1-3. Plaintiff was deposed regarding his allegations that Defendant Blandy's decision to terminate his employment was motivated by race or gender discrimination. Pavel Depo., Vol. 3, p. 62-72. Plaintiff testified that he had no evidence to support either claim. *Id*. Specifically, as to race discrimination, Plaintiff testified as follows:

> Q: Just to make sure I am tracking on that –
>
> A: Uh-huh.
>
> Q: -- you are saying that you have no information or evidence showing that Dr. Blandy's decision to terminate you was driven by your race. Is that correct?

Page 8 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

>A: Not at this time, Counsel.

Pavel Depo., Vol. 3, 72:1-6.

Similarly, as to gender discrimination, Plaintiff testified as follows:

>Q: What about your gender? Do you have any evidence or information that Dr. Blandy was making this decision based on your gender?
>
>A: Not at this time, Counsel.

Pavel Depo., Vol. 3, 72:7-10.

Because Plaintiff testified that he has no evidence that Defendant Blandy's decision to terminate his employment was motivated by his race or gender, he cannot establish a prima facie case or otherwise create a genuine issue of material fact concerning the University's motivation in terminating his employment. Plaintiff's lack of evidence is strikingly similar to that not put forth by the plaintiff in *Richardson v. Tex-Tube Co.*, 843 F.Supp.2d 699 (S.D. Tex. 2012). In that case, the plaintiff, Richardson, alleged claims for discrimination and retaliation against his former employer. The court explained:

>When deposed, Richardson failed to state any facts to support his discrimination or retaliation claims. In fact, Richardson admitted that he had no facts, "at the moment," that specifically supported his claims. The deposition illustrates that Richardson could not establish a prima facie discrimination or retaliation claim.

*Id.* at 706. Based on Richardson's deposition testimony, the court not only concluded that Richardson had failed to establish a prima facie case, but that his case was meritless and without foundation, entitling the defendant to an award of its attorneys' fees. *Id.* at 706-07. Here, Plaintiff's deposition testimony is nearly identical to that in *Richardson* and leads to the same conclusion—that Plaintiff cannot establish a prima facie case of race or gender discrimination. As such, there is no genuine issue of material fact and the University is entitled to summary judgment on Plaintiff's Title VII claims as a matter of law.

    3. **Even if Plaintiff could establish a prima facie case of race or gender discrimination, he cannot rebut the University's legitimate, non-discriminatory reason for terminating his employment.**

Even if Plaintiff could establish a prima facie case of race or gender discrimination, his testimony makes clear that he cannot supply the necessary specific and substantial evidence needed to rebut as pretext the University's legitimate, non-discriminatory reason for terminating his employment—namely, that he violated the University's policy prohibiting sexual harassment by subjecting a female undergraduate student to unwelcome and nonconsensual contact and comments of a sexual nature. *See* Blandy Second Dec., Ex. 1, p. 32-33. Accordingly, there is no genuine issue of material fact with regard to Plaintiff's Title VII race and gender discrimination claims. The claims have no evidentiary basis, and the University is entitled to judgment as a matter of law.

  C. **The Individual Defendants are entitled to summary judgment on Plaintiff's Section 1981 claim.**

In support of his Section 1981 claim, Plaintiff alleges that he was terminated because of his race. As explained below, the Individual Defendants are entitled to summary judgment on that because Plaintiff cannot put forth any evidence that their actions were motivated by his race. Therefore, he cannot establish a prima facie case or otherwise create a question of fact as to the Individual Defendants' motivation for terminating his employment. Further, even if Plaintiff could establish a prima facie case, he cannot rebut the legitimate, non-discriminatory reason for terminating his employment—that he violated the University's policy prohibiting sexual harassment by subjecting a female undergraduate student to unwelcome and nonconsensual contact and comments of a sexual nature. Blandy Second Dec., Ex. 1, p. 32-33. Accordingly, the Individual Defendants are entitled to summary judgment as to Plaintiff's Section 1981 claim.

    1. **Legal standard**

Section 1981 prohibits racial discrimination in the making and enforcement of contracts, including the termination of contracts. 42 U.S.C. § 1981. The legal principles that guide "'a court in a Title VII dispute apply with equal force in a [Section] 1981 action.'" *Reynaga*, 847 F.3d at

686 (quoting *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003)); *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007) ("In analyzing [a plaintiff's] claims under [Section] 1981, we apply 'the same legal principles as those applicable in a Title VII disparate treatment case.'") As such, the legal standard outlined above for Plaintiff's Title VII claims applies equally to the analysis of Plaintiff's Section 1981 claim.

      2.      **Plaintiff cannot establish a prima facie case for race discrimination or create a question of fact as to the Individual Defendants' motivations in terminating his employment.**

          a.      **Defendant Blandy**

As noted above, Plaintiff testified that he has no evidence that Defendant Blandy's decision to terminate Plaintiff's employment was motivated by his race. Pavel Depo., Vol. 3, p.71-72. Accordingly, like his Title VII claims against the University, Plaintiff's Section 1981 claim against Defendant Blandy fails, and Defendant Blandy is entitled to summary judgment.

          b.      **Defendant Daugherty**

Defendant Daugherty did not make the decision to terminate Plaintiff's employment. However, to the extent she influenced Defendant Blandy's decision, Plaintiff cannot establish a prima facie case of race discrimination or otherwise create a genuine issue of material fact concerning her motivations. Specifically, Plaintiff testified as follows regarding Defendant Daugherty's involvement in the investigation:

> Q: Do you think that Ms. Daugherty was ever driven by your race or gender in her role of – at the university related to your investigation?
>
> A: Not at this time.

Pavel Depo., Vol. 3, 62:10-13. As in *Richardson*, Plaintiff's testimony demonstrates that Defendant Daugherty is entitled to summary judgment on Plaintiff's Section 1981 claim as a matter of law. *See* 843 F. Supp. 2d at 706 (holding that, where a plaintiff testifies he has no facts "at the moment" that support his claim, no prima facie case for discrimination exists).

Page 11 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

### c.   **Defendant Kamphaus**

Like Defendant Daugherty, Defendant Kamphaus did not make the decision to terminate Plaintiff's employment. However, to the extent he influenced Defendant Blandy's decision, Plaintiff cannot establish a prima facie case of race discrimination or otherwise create a genuine issue of material fact concerning his motivations. Specifically, at his deposition, Plaintiff speculated at length concerning Defendant Kamphaus' alleged motivations, but he did not—and cannot—put forth specific facts sufficient to draw an inference of discrimination:

> Q:  Can you please describe for me why you think Dr. Kamphaus was influenced or motivated by your race?
>
> A:  I believe that because I was an American Indian and because I was male, it made him more prone to vote in favor for my termination than if I was female and of another race.
>
> Q:  Why do you think that?
>
> A:  Just a feeling and a sense gained from my interactions with him given the circumstances that it would be easy to replace me and be able to support his position that he wasn't making this decision based on race and ethnicity or race and ethnicity and gender. He made note that I had authored a well-regarded proposal to hire indigenous Native scholars. He is on record as saying that he wanted to meet with me about that. And because of the circumstances, I authoring a well-regarded hiring proposal, made it easier for him to support firing me, because it would be really easy to replace me with another American Indian, but didn't replace me with an American Indian male, replaced me with an American Indian female. So those are just an array of circumstances that had me suspect that gender and race played a role in his decision to terminate me. Same time, I don't know whether he ever participated in terminating another faculty member and what that race or gender was.
>
> Q:  At the time that this complaint was lodged against you, wasn't Dr. Kamphaus fairly new to the University of Oregon?
>
> A:  Yes.
>
> Q:  Explain to me why -- how you are connecting this concept that you would have been easy to replace to thinking that Dr. Kamphaus was making or participating in your termination decision related to your race.
>
> A:  Firing a tenured full professor who is an American Indian would have sent a message throughout Indian country within the State of Oregon that they were not supportive of Native American education, but they were poised to be able to say that is not true because they

> were immediately going to launch a search to replace me and hire someone. If there was no position or proposal to hire someone or just to hire someone non-Native, it would have been difficult to defend, but because they were able to hire someone who was Native, search for someone who was Native, it may have been easier to fire me because of my race being Native.
>
> Q: And so now I am going to ask you to make a -- I think a distinction or maybe a distinction. You are saying it made it easier for them to terminate you, but do you agree that making it easier for them to terminate you is different than having the decision to terminate you be motivated by your race?
>
> A: It is a difficult distinction for me to make.
>
> Q: Do you think that Dr. Kamphaus participated in the decision to terminate you at least in part because you are a Native American?
>
> A: Yes.
>
> Q: And is that solely based off of your belief that you were easily replaceable?
>
> A: No.
>
> Q: What else are you basing that belief on?
>
> A: I am basing that belief on the fact that I was an American Indian male, and until I find any other reason to tell me otherwise, I believe that I was terminated in part because I was an American
>
> Indian male. It wasn't something I disguised or hid. I openly behaved as an American Indian male. That they would terminate me and somehow believe that their decision was not based on my race or gender is difficult for me to believe. That I don't have that they wrote down that that is what they did specifically is irrelevant in the sense that the circumstance in and of itself would warrant at least someone entertaining the possibility they terminated me in part because I was an American Indian male.

Pavel Depo., Vol. 3, 64:24 – 68:5. The "facts" Plaintiff cites in his deposition testimony as quoted above are not facts at all but merely his speculation based on his unfounded beliefs. Especially confounding is Plaintiff's apparent assertion that his firing was race-motivated because Defendants terminated his employment in order to replace him with another Native American professor. Defendant Kamphaus is entitled to summary judgment on Plaintiff's Section 1981 claim as a matter of law. *See Cafasso, U.S. ex rel v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047,

Page 13 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

        3.    **Even if Plaintiff could establish a prima facie case of race discrimination, he cannot rebut the legitimate, non-discriminatory reason for terminating his employment.**

Like Plaintiff's Title VII claims, even if Plaintiff could establish a prima facie case of race discrimination under Section 1981, his testimony makes clear that he cannot supply the necessary specific and substantial evidence needed to rebut as pretext the legitimate, non-discriminatory reason for terminating his employment—namely, that he violated the University's policy prohibiting sexual harassment by subjecting a female undergraduate student to unwelcome and nonconsensual contact and comments of a sexual nature. Blandy Second Dec., Ex. 1, p. 32-33. Accordingly, there is no genuine issue of material fact as to Plaintiff's Section 1981 against the Individual Defendants. The claim has no evidentiary basis, and the Individual Defendants are each entitled to judgment as a matter of law.

    D.    **The Individual Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.**

In support of his First Amendment retaliation claim, Plaintiff alleges that he was fired in retaliation for constitutionally-protected statements he made in opposition to the firing of Thomas Ball, Ph.D., a former University employee.[6] However, as explained below, that claim fails because Plaintiff cannot put forth any evidence that his statements were a substantial or motivating factor in the Individual Defendants' involvement in his termination. Instead, the University terminated Plaintiff's employment because it determined he violated the University's policy prohibiting sexual harassment by subjecting a student to unwelcome and nonconsensual contact and comments

---

[6] Plaintiff has testified that his statements in opposition to Dr. Ball's firing are the only statements that he believes led to his firing and which form the basis of his First Amendment retaliation claim. Pavel Depo., Vol. 1, 34:8-12 ("Q: Okay. So you were vocally opposed to the decision to terminate Tom Ball. Are there any other instances of free speech that you are claiming was the basis for a retaliation? A: No.").

Page 14 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

of a sexual nature. Blandy Second Dec., ¶ 6, Ex. 1, p. 32-33. Accordingly, the Individual Defendants are entitled to summary judgment as to Plaintiff's First Amendment retaliation claim.

### 1. **Legal standard**

Courts have long acknowledged that state employees do not give up their First Amendment rights as a result of their public roles. *See, e.g.*, *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). The Ninth Circuit applies a five-step analysis to First Amendment retaliation claims: the plaintiff must first establish that (1) he spoke on a matter of public concern, (2) he spoke as a private citizen and not as a public employee, and (3) his protected speech was a substantial or motivating factor in an adverse employment action. The burden then shifts to the defendant, which can avoid liability by showing *either* that (4) a legitimate administrative interest outweighed the employee's right to free speech or (5) the defendant would have taken the adverse employment action even absent the protected speech. *Id.*

### 2. **Plaintiff cannot put forth evidence that his speech was a substantial or motivating factor in his termination.**

The Individual Defendants do not concede that Dr. Ball's firing was a matter of public concern or that Plaintiff's statements about the firing were made in his capacity as a private citizen. But even assuming such for the purposes of summary judgment, Plaintiff's claim fails because he cannot put forth evidence that his speech was a factor of any kind in his termination, let alone a substantial or motivating factor in his termination.

Plaintiff testified during his deposition that he has no direct evidence to suggest that his speech factored into his termination:

> Q: Do you have any direct evidence that shows that your opposition to Dr. Tom Ball [sic] factored into the university's decision to terminate your employment?
>
> A: No.

Pavel Depo., Vol. 3, 45:1-5. Instead, Plaintiff asserts there is a circumstantial connection between his speech and his firing because he is a Native American male and he was vocally opposed to Dr. Ball's firing. Pavel Depo., Vol. 3, 45:6-11. However, evidence that Plaintiff was vocally opposed

Page 15 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

to Dr. Ball's firing is insufficient to create an issue for trial. In other words, Plaintiff cannot survive summary judgment by showing that he vocally supported Dr. Ball, that he publicly objected to Dr. Ball's termination, and that he was terminated. To successfully defend against the Individual Defendants' motion, he must show a causal connection between these events. *See Erickson v. Pierce County*, 960 F.2d 801, 805 (9th Cir. 1992) ("[A]ll of the above evidence merely suggests that Erickson was a Griffies supporter who was terminated, not that she was terminated because she was a Griffies supporter.")

Further, if Plaintiff intends to create a genuine issue of material fact with circumstantial evidence (as he must, having admitted that he has no direct evidence), Plaintiff must do more than offer evidence that the Individual Defendants knew of his statements in support of Dr. Ball. Instead, Plaintiff must produce at least one of three kinds of circumstantial evidence to support an allegation that his protected speech was a substantial or motivating factor in the Individual Defendant's participation in the decision to terminate his employment: 1) closeness in time between his allegedly protected speech and his termination; 2) evidence of the Individual Defendant's opposition to his speech; or 3) evidence that the University's claimed reason for the adverse action was pretextual. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 744-45 (9th Cir. 2001). As explained below, Plaintiff cannot put forth any such evidence as to any of the Individual Defendants. Accordingly, the Individual Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

      a.    **Plaintiff's termination occurred nearly two years after his speech.**

Plaintiff cannot show proximity in time between his statements about Dr. Ball and his termination because Dr. Ball's firing and the controversy about it occurred in December 2012 and early 2013, and Plaintiff was not terminated until January 21, 2015. *See* Blandy Second Dec., ¶ 3; Answer, ¶ 3. The Ninth Circuit has already held that two years is too long a passage of time for a plaintiff to survive summary judgment on a First Amendment retaliation claim based on evidence of proximity in timing. *Keyser*, 265 F.3d at 744 (citing *Erickson*, 960 F.2d 801, for the proposition

Page 16 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

that three months is too long to demonstrate proximity in time). Thus, Plaintiff's claim must also fail.

          b.        **Plaintiff cannot show that the Individual Defendants opposed his speech.**

                  (1)        **Defendant Blandy**

Plaintiff cannot put forth any evidence that Defendant Blandy (who made the decision to terminate Plaintiff's employment) opposed Plaintiff's speech. Defendant Blandy testified that the basis for his decision was the report of the investigation into the sexual harassment allegations against Plaintiff, Blandy Depo., 30:18-19, and that he was not even aware of Plaintiff's statements about Dr. Ball at the time of his decision to terminate Plaintiff's employment. Blandy Second Dec., ¶ 4. Plaintiff's only "evidence" on this point is a conclusory assertion that his stance on Dr. Ball was generally well-known:

> Q: Do you have any evidence or information that Dr. Blandy was aware of your outspoken stance related to Dr. Ball?
>
> A: Besides the widespread, well-known stance that I expressed?
>
> Q: Correct.
>
> A: No.

Pavel Depo., Vol. 3, 70:21-71:2. As noted above, that "evidence" is insufficient as a matter of law to show that Plaintiff's speech was a substantial or motivating factor in his termination. *See Keyser*, 265 F.3d at 751 ("By producing mere evidence that Sweeney knew of their charges, however, Keyser and Robledo do not create a genuine issue of material fact on the question of whether Sweeney's decision to recommend their reassignment was motivated by their charges.").

                  (2)        **Defendant Daugherty**

Similarly, Plaintiff cannot put forth any evidence demonstrating that Defendant Daugherty, who assisted with the investigation into the sexual harassment complaint, opposed his speech concerning Dr. Ball. When given the opportunity to explain how his speech affected the investigation, Plaintiff could not specify:

Page 17 – DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

> Q: And do you agree that Penny Daugherty and her department were investigating the complaints brought by Student No. 3?
>
> A: Initially, yes.
>
> Q: So how is it that you think that Dr. Tom Ball played a role in the university's decision to -- or investigation about the complaints brought by Student 3?
>
> A: Because of the network and relationship between the allegations brought forth by Student No. 3 to individuals like Jason Younker and Janne Underriner.
>
> Q: And do you have any evidence or information that supports your belief?
>
> A: Besides what we have already talked about?
>
> Q: Correct.
>
> A: No.

Pavel Depo, Vol. 3, 63:1-17. There is simply no evidence that Defendant Daugherty opposed Plaintiff's speech regarding Dr. Ball.

### (3) **Defendant Kamphaus**

Plaintiff cannot put forth any evidence that Defendant Kamphaus opposed Plaintiff's speech regarding Dr. Ball. In fact, Plaintiff testified at his deposition that he has no information that would link Defendant Kamphaus' involvement in Plaintiff's termination to Plaintiff's speech about Dr. Ball:

> Q: Do you think the statements that you made regarding Tom Ball played any role in Dr. Kamphaus' part of the university's decision to terminate your employment?
>
> A: I am not sure.
>
> Q: Do you have any evidence or information that would link Dr. Kamphaus' involvement to your opposition of Tom Ball's termination?
>
> A: Not really, huh-uh.

Pavel Depo, Vol. 3, 69:14-22.  There is no evidence that Defendant Kamphaus opposed Plaintiff's speech regarding Dr. Ball.

        c.    **Plaintiff cannot put forth any evidence that the stated reason for his termination was pretextual.**

Finally, Plaintiff cannot put forth evidence that the University's determination that he violated University policy when he made inappropriate, nonconsensual sexual advances against a female undergraduate student was a mere pretext to terminate him because of his opposition to Dr. Ball's firing.  Plaintiff admitted that the student's complaint was not motivated by Plaintiff's statements about Dr. Ball.  Pavel Depo., Vol. 3, 62:22-25.  He also admitted that the University's determination that he had sexually harassed a student played a role in his termination.  *Id.* at Vol. 3, 68:6-10.  Plaintiff cannot show that any part of the investigation of his conduct was affected by his statements about Dr. Ball.  *Id.* at Vol. 3, 63:5-17.  Instead, Plaintiff's only "evidence" of retaliation is that he vocally opposed Dr. Ball's firing and, two years later, the University terminated his employment.  In the intervening two years, a female undergraduate student complained that Plaintiff had inappropriately touched and kissed her without her consent, and an investigation by the University found that complaint substantiated.  Blandy Second Dec., Ex. 1, p. 32-33.  Plaintiff can put forth no evidence that his statements were a factor in his termination, let alone a substantial or motivating one.

        3.    **The Individual Defendants are entitled to summary judgment because the University would have terminated Plaintiff's employment regardless of his speech.**

As outlined above, Plaintiff's First Amendment retaliation claim fails because Plaintiff cannot put forth any evidence that his speech regarding Dr. Ball was a substantial or motivating factor in his termination.  But, even if Plaintiff put forth such evidence, his claim still fails because the University would have terminated him even in the absence of his statements about Dr. Ball.

If a public employee meets his burden of showing that his protected speech on an issue of public concern was a substantial or motivating factor in his termination, a defendant can still

prevail by showing that it not only could have, but would have terminated the employee even in the absence of his protected speech. *Gillette v. Delmore*, 886 F.2d 1194, 1198 (9th Cir. 1989).

Here, the basis for Defendant Blandy's termination decision was the report of the investigation into the sexual harassment allegations against Plaintiff. Blandy Depo., 30:18-19; Blandy Second Dec., ¶¶ 5,6. Under the University's Collective Bargaining Agreement, a single incident of such severity was sufficient on its own to support Plaintiff's immediate termination. Blandy Depo., 20:20-25. Defendant Blandy would have terminated Plaintiff's employment regardless of Plaintiff's speech concerning Dr. Ball. Blandy Second Dec., ¶ 7.

IV.   **Conclusion**

For all the reasons stated above, Defendants' motion for summary judgment should be granted and Plaintiff's Amended Complaint should be dismissed with prejudice.

DATED: July 7, 2017.

HERSHNER HUNTER, LLP

By   */s/ Amanda M. Walkup*
**Amanda M. Walkup, OSB 934508**
awalkup@hershnerhunter.com
**Alexandra P. Hilsher, OSB 114218**
ahilsher@hershnerhunter.com
Telephone: (541) 686-8511
Facsimile: (541) 344-2025
**Of Attorneys for Defendants**